OPINION
{¶ 1} Carol Himes Shaw appeals from a judgment of the Montgomery County Court of Common Pleas, Juvenile Division, terminating her parental rights with respect to Erin Secrest, and awarding permanent custody of Erin to Montgomery County Children Services (MCCS). Shaw contends that the trial court erred in finding that an award of permanent custody is in the best interest of the child, and by finding that the child could not be placed with the parents within a reasonable time and that there is a reasonable expectation of adoption. She further contends that the trial court erred in finding that MCCS made a reasonable effort to reunify the family.
 {¶ 2} We agree that the evidence in this record fails to demonstrate that MCCS made a reasonable effort to reunify Shaw and her daughter. After Shaw married and relocated to Pennsylvania, reasonable efforts required MCCS to explore the possibility of transferring temporary custody of Erin to the appropriate agency in Shaw's county of residence in Pennsylvania, and the record fails to indicate more than a cursory contact with that agency. Therefore, we conclude that the trial court erred by granting permanent custody of the child to MCCS. Our conclusion that the record fails to demonstrate a reasonable effort to unify Shaw and her daughter renders moot Shaw's other arguments. Because the record fails to demonstrate that MCCS made a reasonable effort to unify Shaw and her daughter, the judgment of the trial court is Reversed, and this cause is Remanded for further proceedings consistent with this opinion.
 I {¶ 3} In 1999, Carol Shaw became acutely depressed following the breakdown of her marriage. Montgomery County Children's Services became involved with Shaw and her children through its Home Management program. In June, 1999, Teresa White, of MCCS, did an assessment, and found that Shaw needed help maintaining her house. White also had some concern regarding the children's school attendance and the lack of medical insurance coverage for the family. White concluded that Shaw would be able to parent properly if her depression were alleviated.
 {¶ 4} Later that month, Belinda Creekmore, of MCCS, replaced White and began to work with the family on the concerns raised by White. She noted that the home was filthy and bug-infested. In July, the family moved to a new residence. Between June and September, 1999, Creekmore noted significant improvement in the cleanliness of the home and the children. However, Creekmore noticed that the condition of the second residence also deteriorated. The family moved again in October or November of 1999. The condition of the third residence also deteriorated. The family moved yet again in January of 2000. Creekmore's involvement with the family ended in February, 2000. At no time during her work with the family did Shaw sign up for medical insurance benefits, as she had been requested to do. According to Shaw, the children were covered under her ex-husband's insurance. Shaw maintained employment during the time Creekmore worked on the case.
 {¶ 5} On February 7, 2000, Montgomery County Children's Services ("MCCS"), filed a complaint alleging that Carol Shaw's minor children were dependent and neglected. The complaint sought temporary custody of the children, Erin, Lindsey and Nathan. A hearing was held in April, 2000, and the court adjudicated the children dependent and awarded temporary custody to MCCS. A case plan was filed requiring Shaw to attend all medical, counseling and educational appointments of the children and to complete both a "parenting and psychological assessment."
 {¶ 6} In September, 2000, Shaw moved to Pennsylvania and married. Shaw contacted a social worker in her county regarding transferring the children to Pennsylvania. MCCS was informed by a Pennsylvania social worker that Shaw's home in Pennsylvania was "nice" and "clean." The record further shows that Shaw's husband is employed, and that Shaw is financially able to stay at home, where she cares for a child born of her new marriage, and for her grandchildren.
 {¶ 7} MCCS refused to transfer the case, instead requesting Shaw to return to Ohio and complete her case plan. MCCS caseworker Tracie Hughes indicated that the case was not transferred because Shaw did not complete her case plan. Specifically, Hughes complained that Shaw failed to attend most of the children's various appointments and visitations and failed to obtain a parenting and psychological assessment. However, Hughes admits that MCCS did not make a referral for the assessment until February, 2001. Additionally, Hughes was unable to produce documentation indicating that Shaw was timely informed of the children's appointments. The record also indicates that Shaw was unable to travel to Ohio for some of the appointments and visits due to her pregnancy. Hughes also noted that MCCS recognized that the children in their temporary custody were bonded with Shaw.
 {¶ 8} On November 29, 2000, MCCS filed motions for permanent custody of the children. Hearings were held in April and October, 2001. At the October hearing, the parenting and psychological assessment had not been performed, although Shaw indicated that the assessment was scheduled for the following month. Following the hearings, the magistrate awarded permanent custody of Erin and Lindsey to MCCS. Nathan was placed in a permanent planned living arrangement. Shaw filed objections to the magistrate's decision, which were overruled by the trial court. The trial court adopted the decision of the magistrate. From this decision, Shaw appeals.[1]
 II {¶ 9} Shaw's Fourth Assignment of Error is as follows:
 {¶ 10} "The trial court erred in failing to evaluate the agency's efforts at reunification and in failing to make a written report as required by R.C. 2151.419(B)(1)."
 {¶ 11} Shaw contends that the trial court erred in granting permanent custody to MCCS because the agency failed to make a reasonable attempt to reunify the family. She also contends that the trial court erred because it failed to comply with R.C. 2151.419(B)(1).
 {¶ 12} Before awarding permanent custody of a child to a public children's services agency or a private child-placing agency, the trial court must find by clear and convincing evidence "that (1) one or more of the eight specifically enumerated factors in R.C. 2151.414(E) are present, that (2) permanent custody is in the best interest of the child, and that (3) reasonable efforts at reunification have been made or that such efforts would be futile." In re Smith (Apr. 12, 2002), Miami App. No. 2001-CA-54.
 {¶ 13} With regard to the reunification requirement, we have opined that "* * * the agency must prove that reasonable efforts have been made to reunite the child and parent, or that such efforts would be futile." In re Smith (April 12, 2002), Miami App. No. 2001-CA-54, citations omitted. "Reasonable efforts are described as being a good faith effort which is `an honest, purposeful effort, free of malice and the desire to defraud or to seek an unconscionable advantage.'" In reCranford (July 24, 1998), Montgomery App. Nos. 17085 and 17105, citing Inre Weaver (1992), 79 Ohio App.3d 59. "The issue is not whether CSB could have done more, but whether it did enough to satisfy the `reasonableness' standard under the statute." In re Smith, supra, citation omitted.
 {¶ 14} Additionally, R.C. 2151.419(B)(1) requires the trial court to make "written findings of fact setting forth the reasons supporting its determination" that the agency either made a reasonable attempt to reunify the family or that the agency was not required to make such an effort. "R.C. 2151.419(B) further specifies what is to be in the court's finding; [t]he court is to briefly describe the services provided by the agency and why those services did not enable the child to return home."In re Combs (June 10, 1998), Miami App. No. 97-CA-60.
 {¶ 15} In this case, the magistrate specifically found that MCCS had made reasonable efforts to return the child to the home via "case management; information/referral and substitute care," and that these services did not enable the child to return home. The magistrate also found that Shaw had failed to remedy the conditions that had caused the child to be removed, because she had failed to visit, support or communicate with the child, and had failed to provide medical treatment and food.
 {¶ 16} Based upon our review of the magistrate's findings, which were adopted by the trial court, we conclude that the trial court substantially complied with the statutory requirement that it make written findings regarding the agency's attempt at reunification.
 {¶ 17} More problematic is the issue of whether MCCS actually made reasonable efforts to reunify the family. In this case, it is undisputed that upon moving to Pennsylvania, Shaw did not attend the majority of the children's appointments, and did not have any regular visitation or telephone contact with them. However, it is also clear that Shaw made an effort to have the children, and the case, transferred to Pennsylvania. She even went so far as to put MCCS in contact with a social worker from her county of residence regarding the transfer. Additionally, while it is not clear from the record how far away Shaw lived in Pennsylvania, her counsel asserted at oral argument that she lives far enough away from Dayton to make it difficult to drive here on a regular basis, and the agency's counsel did not contradict this assertion.
 {¶ 18} From our review of the record, we conclude that, despite Shaw's request, MCCS made a decision not to transfer the case, because Shaw had not completed the case plan set by MCCS. Specifically, Hughes stated that the case was not transferred "because [Shaw] had not attended medical, school and counseling appointments other than two or three * * * [a]nd, we had not seen a consistency that would show us that she would continue to do these things if the children were relocated."
 {¶ 19} The record does not demonstrate that Pennsylvania would not accept a transfer of the case. Furthermore, it appears that a transfer would be possible under the Interstate Compact on the Placement of Children. See, R.C. 2151.39 and R.C. 5103.20. We conclude from our review of the record that MCCS did not seriously consider the possibility of transferring the case, and did not pursue that option. Instead, it appears that MCCS determined that because Shaw had failed to travel to Ohio to comply with the case plan, it would not attempt to seek any alternative avenues aimed at reunification. In adopting that approach, MCCS ignored the fact that Shaw had difficulty traveling to Ohio to be with her children, that attainment of the goals of the case plan may be enhanced by a transfer, and that a transfer may be a viable option in this case.
 {¶ 20} We do not intend by this opinion to require that the temporary custody of the children actually be transferred to Pennsylvania. Still less do we imply that, as Shaw argued at the oral argument, custody of the children should now be restored to Shaw in Pennsylvania. We conclude merely that by failing to give serious consideration to this possibility, MCCS failed to make a reasonable effort to reunify the family. Therefore, we conclude that the record before us does not support a finding that MCCS made a reasonable attempt to reunify the family.
 {¶ 21} Shaw's Fourth Assignment of Error is sustained.
 III {¶ 22} Shaw's First, Second and Third Assignments of Error are as follows:
 {¶ 23} "The trial court erred in finding the grant of permanent custody of Lindsey and Erin Secrest to Montgomery Children's to be in the best interest of the children.
 {¶ 24} "The trial court erred in finding that the children cannot be placed with either of the parents within a reasonable time, or should not be placed with the parents.
 {¶ 25} "The trial court erred in finding that the children are adoptable and that the agency has a reasonable expectation of adoption."
 {¶ 26} Shaw contends that the trial court erred in granting permanent custody of Erin to MCCS. We need not address these arguments, because they have been rendered moot by our disposition of the Fourth Assignment of Error, in Part II, above. Accordingly, the First, Second and Third Assignments of Error are overruled as moot.
 IV {¶ 27} Shaw's Fourth Assignment of Error having been sustained, and her First, Second and Third Assignments of Error having been overruled as moot, the judgment of the trial court is Reversed, and this case is Remanded for further proceedings consistent with this opinion.
BROGAN and YOUNG, JJ., concur.
[1] This appeal pertains solely to the grant of permanent custody of Erin Secrest. Shaw has filed a separate appeal regarding Lindsey Secrest. Erin and Lindsey's cases were not consolidated on appeal, although they have been briefed and argued together. No appeal has been filed regarding Nathan.